## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

NUCOR CORPORATION,

                **Plaintiff,**

     **v.**

UNITED STATES,

               **Defendant.**

</td><td>

Before: Hon. _____

Court No. 23-00003

</td></tr>
</table>

### COMPLAINT

Plaintiff Nucor Corporation ("Plaintiff" or "Nucor"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest portions of the U.S. Department of Commerce's ("Commerce") final results of the 2020 administrative review of the countervailing duty order on *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*. The final results were issued on November 30, 2022 and were published in the *Federal Register* on December 6, 2022. *See* Issues and Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 87 Fed. Reg. 74,597 (Dep't Commerce Dec. 6, 2022) (final results of countervailing duty admin. rev.; 2020) ("Final Decision Memo").

### JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii).

Court No. 23-00003

## STANDING

3.     Plaintiff is a U.S. producer of subject carbon and alloy steel cut-to-length plate products, an interested party within the meaning of 19 U.S.C. § 1677(9)(C), and was a party to the administrative review in connection with which this matter arises.  Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.     Plaintiff commenced this action by filing a Summons on January 5, 2023, within 30 days after the publication of the Final Results in the *Federal Register*.  Summons (Jan. 5, 2023), ECF No. 1.  Plaintiff is filing this Complaint within 30 days after filing the Summons. The  Summons  and  Complaint,  therefore,  are  timely  filed  pursuant  to  19  U.S.C. § 1516a(a)(2)(A)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.     On  April  4,  2017,  Commerce  published  its  final  determination  in  the countervailing duty investigation of *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*.  *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 82 Fed. Reg. 16,341 (Dep't Commerce Apr. 4, 2017) (final affirm. countervailing duty deter. and final neg. critical circumstances deter.).  On May 25, 2017, Commerce published the countervailing duty order in the *Federal Register*.  *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 82 Fed. Reg. 24,103 (Dep't Commerce May 25, 2017) (countervailing duty order).  Commerce initiated the administrative review subject to this Complaint on July 6, 2021, covering the period of review of January 1, 2020 to December 31, 2020.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 35,481, 35,483-84 (Dep't Commerce July 6, 2021).

Court No. 23-00003

6.　　On October 14, 2021, Nucor timely filed a request for Verification. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Request for Verification* (Oct. 14, 2021). Specifically, Nucor requested that Commerce conduct verification of the sole mandatory respondent, POSCO, and the Government of the Republic of Korea ("GOK") in accordance with the agency's regulations that require Commerce to conduct verification of factual information in an administrative review if (i) a domestic interested party submits a timely written request for verification and (ii) no verification has been conducted during either of the two immediately preceding reviews. 19 C.F.R. § 351.307(b)(1)(v).

7.　　Commerce issued an initial questionnaire to the GOK, including questions regarding the provision of electricity for less than adequate renumeration, to which the GOK responded on October 15, 2021. Letter from Yoon & Yang to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, Case No. C-580-888: GOK's Initial Questionnaire Response* (Oct. 15, 2021) ("GOK IQR").

8.　　In its questionnaire response, the GOK described the structure of the Korean electricity market and the operations of the state-owned electric utility, the Korea Electric Power Corporation ("KEPCO").  It explained that "KEPCO is the exclusive supplier of electricity in Korea," but that "KEPCO itself does not generate electricity."  GOK IQR at 18-19.  Instead, KEPCO "purchases electricity from generators" through a market called the Korea Power Exchange ("KPX") "and transmits and distributes {the electricity} to customers." *Id.* at 19.  The GOK provided information showing that most electricity is generated by six generators that are wholly owned and consolidated KEPCO subsidiaries, and that the KPX in turn is wholly owned by KEPCO and its six generation subsidiaries. *Id.* at 19-20.  The GOK further explained that the

price at which KEPCO purchases electricity from generators through the KPX is determined by a formula consisting of a variable cost component, a fixed cost component, and an "adjustment coefficient factor," which "prevent{s} KEPCO's overpayment" to certain types of generators. *Id.* at 39-41. Each of these elements of the electricity price is determined by a "Cost Evaluation Committee" within the KPX and not by the generators themselves. *Id.* at 39.

9.      The GOK also provided KEPCO's 2019 cost data for supplying electricity. *Id.* at Exhibit E-9. It explained that these costs "include{d} the payment for the purchase of electricity, labor costs, grid maintenance fee" and various taxes and fees that were "not related to the sales of electricity . . . ." *Id.* at Appendix-2, 1. With respect to sales prices, the GOK explained that the mandatory respondents paid for electricity based on industrial electricity prices in a generally applicable electricity tariff schedule with different prices for on-peak, mid-peak, and off-peak demand periods. *Id.* at 39. At Commerce's request, the GOK later provided KEPCO's 2020 cost-data for supplying electricity. Letter from Yoon & Yang to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, Case No. C-580-888: GOK's Supplemental Questionnaire Response – Part 1* (Apr. 14, 2022) at Exhibit E-9.1. POSCO reported the monthly volume and value of its electricity consumption during each of the demand periods. Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, Case No. C-580-888: POSCO's Initial Questionnaire Response* (Oct. 13, 2021) at Exhibit F-10.

10.     Commenting on the GOK's questionnaire responses, Nucor pointed out that the GOK identified various price elements determined by a Cost Evaluation Committee ("CEC") within the Korea Power Exchange, including marginal price, a capacity price, and an adjusted coefficient. The GOK, however, did not provide the CEC's cost assignments for the POR or

Court No. 23-00003

information regarding any changes to those assignments. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Comments on the GOK's Initial Questionnaire Response* (Nov. 18, 2021) at 9. Furthermore, Nucor noted that the GOK did not provide the source data and documents from the generators on which the CEC's assignments were based. *Id*. Nucor asked Commerce to collect additional information to address these and other related issues in the GOK's questionnaire response. *See id*. at 4-10. Commerce did not attempt to collect additional information regarding the actual costs of electricity generation from the generators or the cost assignments of the KPX Cost Evaluation Committee.

11.     Commerce issued the preliminary results of the administrative review on May 31, 2022 and published them in the Federal Register on June 3, 2022.  Preliminary Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 87 Fed. Reg. 33,720 (Dep't Commerce June 3, 2022) (prelim. results of countervailing duty admin. rev., and intent to rescind rev., in part; 2020).  Applying a "tier three" benefit methodology, Commerce preliminarily determined that KEPCO supplied electricity to POSCO for less than adequate remuneration under certain tariff classes but calculated a non-measurable benefit amount.  *Id.* at 26-31.

12.     With respect to the price at which KEPCO purchased electricity through the KPX, Commerce reasoned that in prior administrative reviews, it had "examined KPX, in the context of an upstream subsidy allegation," and found that there was no benefit conferred by "KPX's prices of the {generation companies'} electricity to KEPCO . . . ."  *Id.* at 29.  It also found that "the GOK provided financial statements for the {generation companies}" and determined "that each of the six {generation companies} recovered its costs."  *Id.*

Court No. 23-00003

13.    With respect to the prices at which KEPCO sold electricity to end users, including the respondents, Commerce "preliminarily determine{d} that KEPCO does have a pricing mechanism in place that is based on market principles, but also that the industrial rates did not always recover costs and a rate of return . . . ." *Id.* at 31. For this analysis, Commerce explained that it "compared the companies' reported industrial tariff rates to KEPCO's cost data." *Id.* Commerce, however, in fact relied on KEPCO's overall cost recovery rates and found that a benefit exists on sales under a specific tariff class to the extent that KEPCO did not cover its costs, inclusive of a return on investment, on sales to all customers in that tariff class. *See* Memorandum from Faris Montgomery, Int'l Trade Compliance Analyst, through Katie Marksberry, Program Manager, AD/CVD Operations, Off. VIII, to The File, re: *Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Preliminary Results Calculation Memorandum for POSCO* (May 27, 2022) at 8-9.

14.    On June 24, 2022, Commerce issued verification preparedness questionnaires to both POSCO and the GOK. *See* Letter from Katie Marksberry, Program Manager, AD/CVD Operations, Off. VIII, to POSCO, re: *2020 Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Verification Preparedness Questionnaire* (June 24, 2022); Letter from Katie Marksberry, Program Manager, AD/CVD Operations, Off. VIII, to the Government of the Republic of Korea, re: *Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, 2020: Verification Preparedness Questionnaire* (June 24, 2022).

15.    Commerce notified both POSCO and the GOK that "it intends to verify the information relied upon in making its final results." *Id*. Due to the temporary suspension of in-

Court No. 23-00003

person verification due to the COVID-19 pandemic, Commerce requested "additional information to aid in its determination regarding in-person verification in this proceeding." *Id*. Commerce stated that it would "evaluate your responses to these questions, in conjunction with other factors, to determine where and how to verify the GOK's reported information." *Id*.

16.     On July 1, 2022, the GOK submitted its response to Commerce's verification preparedness questionnaire and indicated that "the GOK is able to provide conference spaces that can facilitate more than 15 people." Letter from Yoon & Yang to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, 2020, Case No. C-580-888: Response to Verification Preparedness Questionnaire* (July 1, 2022).

17.     On August 30, 2022, Commerce issued an in-person verification schedule that included only POSCO's facilities in Seoul and Incheon. Letter from Katie Marksberry, Program Manager, Off. VIII, AD/CVD Operations, to the Government of the Republic of Korea, re: *Countervailing Duty Administrative Review of CTL Plate from the Republic of Korea; 2020: Verification Schedule* (Aug. 30, 2022).

18.     Without explanation, the GOK was not included in the verification schedule, despite the GOK's willingness to accommodate verification pursuant to its COVID-19 protocols and Commerce's previously stated intention to verify the GOK pursuant to its obligations under the regulations. *Id*. Nor were the GOK's responses in fact verified or addressed in Commerce's October 3, 2022 verification report. Letter from Dennis McClure, Faris Montgomery, Jonathan Schueler, Int'l Trade Compliance Analysts, Off. VIII, AD/CVD Operations, through Katie Marksberry, Program Manager, Off. VIII, AD/CVD Operations, to the File, re: *Verification of the Questionnaire Responses of POSCO: Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea; 2020* (Oct. 3, 2022).

Court No. 23-00003

19.    Nucor filed its case brief on October 11, 2022, arguing that Commerce's methodology for determining the benefit conferred by the provision of electricity for less than adequate remuneration was unlawful and unsupported by the record and should be modified for the final determination.  Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Case Brief* (Oct. 11, 2021).

20.    First, Nucor noted the evidentiary flaws with the cost data on which Commerce relied and argued that it was improper to presume that the data reflected market-based costs.  *Id.* at 4-6.  Because the record was closed and Commerce had decided to rely on KEPCO's cost data as reported by the GOK, however, Nucor argued that this data nevertheless showed that a benefit was conferred.  Nucor argued that the tier three standard for electricity programs as articulated by Commerce is that a benefit is conferred "if the tariff *charged to the respondent* does not cover 'cost of production' plus a 'profitable return on investment' . . . ."  *Id.* at 4.  Nucor argued that the statute and Commerce's rules likewise require the benefit determination to be based on the prices actually paid by the respondents, and that Commerce erred by finding that no benefit was conferred under a particular tariff class because KEPCO covered its costs inclusive of investment return on all sales to all customers in the aggregate.  *Id.* at 9-12.  Nucor argued that basing the benefit analysis on the aggregate performance of the government supplier rather than on the prices actually paid by the respondents under review was contrary to the statute, Commerce regulations, and clearly articulated court and agency precedent.  *Id.*

21. Nucor also argued that Commerce should have conducted a verification of the GOK pursuant to the requirements of 19 C.F.R. § 351.307(b)(1)(v) because (i) a domestic party submitted a timely written request for verification and (ii) no verification had been conducted during either of the two immediately preceding reviews. *Id.* at 14. Nucor noted that Commerce

Court No. 23-00003

"traveled to Korea, verified POSCO and two of the company's affiliates, and returned without conducting verification of the GOK and without offering a justification for the omission." *Id.*

22.    Commerce issued the final results on December 1, 2022 and published them in the Federal Register on December 6, 2022.  Final Decision Memo.

23.    Commerce continued to determine whether the provision of electricity for less than adequate remuneration conferred a benefit based on KEPCO's costs and revenues in the aggregate under the relevant tariff classes.  *Id.* at 21-26.  Commerce reasoned that Nucor's arguments were "inapposite to a tier-three analysis," and that "an evaluation of the government supplier's income and costs and whether the income covers costs and profit . . . has consistently been part of our analysis when assessing whether KEPCO's pricing is consistent with market principles and has been found to be within the bounds of what {the regulation} proposes." *Id.* at 22.

24.    According to Commerce, its "tier-three methodology has been to first determine whether the prices are market-based.  Where prices are set in accordance with market principles, and thus, at fair value, we determine no benefit is conferred; where they are not market-based (*i.e.*, they have not recovered costs plus profit), we determine a price that would be market-based and compare that to what was actually paid using a benchmark." *Id.* at 23.  Commerce also determined that the KEPCO cost data as reported by the GOK reflected market prices because "the wholesale and retail pricing is based on price-setting methodologies that aim to ensure companies in the chain are able to cover their costs, as well as a rate of profit." *Id.*

25.    Based in part on the determination that no measurable benefit was conferred by the provision of electricity for less than adequate remuneration, Commerce calculated final subsidy rates of 0.33%, or *de minimis*, for POSCO.  *Certain Carbon and Alloy Steel Cut-to-*

Court No. 23-00003

*Length Plate from the Republic of Korea*, 87 Fed. Reg. at 74,597 (Dep't Commerce Dec. 6, 2022) (final results of countervailing duty admin. rev.; 2020).  This appeal followed.

<u>CLAIMS AND BASES FOR RELIEF</u>

### Count I

26.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 25.

27.     Commerce's determination that the provision of electricity for less than adequate remuneration conferred a non-measurable benefit was unsupported by substantial evidence and otherwise not in accordance with law.

### Count II

28.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 25.

29.     Commerce's decision not to conduct verification of the GOK's questionnaire responses was unsupported by substantial evidence and otherwise not in accordance with law.

Court No. 23-00003

## <u>REQUEST FOR JUDGMENT AND RELIEF</u>

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

(1)     Hold that Commerce's final results in the 2020 countervailing duty administrative review of *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea* are not supported by substantial evidence on the record and are otherwise not in accordance with law; and

(2)     Hold that Commerce's decision not to conduct verification of the GOK's questionnaire responses in the 2020 countervailing duty administrative review of *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea* is not supported by substantial evidence on the record and is otherwise not in accordance with law; and

(2)     Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

Respectfully submitted,

/s/ Alan H. Price
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Adam M. Teslik, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated:  February 3, 2022

11

## CERTIFICATE OF SERVICE

PUBLIC SERVICE

*Nucor Corporation v. United States*
**Court No. 23-00003**

I certify that a copy of this public submission was served on the following parties, via certified mail, first class international mail (*), and electronic service, on February 3, 2023.

*/s/ Paul A. Devamithran*

Brady W. Mills, Esq.
**Morris, Manning & Martin, LLP**
1401 I St., NW
Suite 600
Washington, DC 20005

Roger B. Schagrin, Esq.
**Schagrin Associates**
900 7th St., NW
Suite 500
Washington, DC 20001

Seokjoong Woo
**Embassy of the Republic of Korea**
2450 Massachusetts Ave., NW
Washington, DC 20008

Jarrod M. Goldfeder, Esq.
**Trade Pacific PLLC**
700 Pennsylvania Ave., SE
Suite 500
Washington, DC 20003

*Sungbum Lee
**Yoon & Yang LLC**
34th Floor, ASEM Tower
517 Yeongdongdaero, Gangnamgu
Seoul, South Korea

General Counsel
**U.S. Department of Commerce**
14th St. and Constitution Ave., NW
Washington, DC 20230

Augustus Jeffrey Golden
Civil Division, National Courts Section
**U.S. Department of Justice**
P.O. Box 480
Ben Franklin Station
Washington, DC 20044